Alex R. Straus, SBN 321366

*Plaintiffs' Attorneys*
*Additional attorneys on signature page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN HOROWITZ and DALIT COHEN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NEUTROGENA CORPORATION, <br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **Demand for Jury Trial** |

     Plaintiffs Jonathan Horowitz and Dalit Cohen ("Plaintiffs") bring this Class Action Complaint against Defendant Neutrogena Corporation ("Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

**NATURE OF THE ACTION**

    1.    This is a civil class action brought by Plaintiffs on behalf of all consumers who purchased Neutrogena Healthy Skin Firming Cream with Broad Spectrum (SPF 15) (the "Product") for normal, household use. Plaintiffs seek damages and equitable remedies for themselves and the putative Class.

    2.    The Product is defective because, undisclosed to consumers, it contains benzophenone, a harmful chemical, known carcinogen, and endocrine disruptor. The

presence of benzophenone is caused by the Product's formulation, which uses octocrylene as an active ingredient. Octocrylene is a chemical that degrades over time, and this process causes an accumulation of benzophenone.

3.    The presence of benzophenone has been demonstrated in animal testing to lead to higher rates of cancer, including leukemia. Benzophenone can be absorbed into the human body when applied topically.

4.    Defendant gained consumers' trust over the course of several decades, and caused consumers reasonable belief that Defendant's products, including the Product, are made with quality materials and safe for their intended purpose.

5.    Defendant formulates, designs, tests, manufactures, markets, advertises, distributes, and sells the Product to consumers throughout the United States, including in the State of California.

6.    Defendant distributes and sells the Product through various authorized retailers in-store and online.

7.    Defendant represents that the Product is safe for its intended use. Contrary to Defendant's representations, however, the Product contains an ingredient not listed on its label, benzophenone, at the time of purchase, which increases over time as one of its active ingredients, octocrylene, degrades into benzophenone.

8.    Benzophenone is a carcinogen and an endocrine disruptor. Benzophenone's presence in food products or food packaging is banned in the United States.[1] Under California Proposition 65, there is no safe harbor for benzophenone in any personal care products, including sunscreens, anti-aging creams, and moisturizers.[2]

9.    Feasible alternative formulations, designs and materials, such as mineral-based sunscreen, were available to Defendant at the time the Product was formulated,

---

[1] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* Chemical Research in Toxicology, 2021 *34* (4), 1046-1054.

[2] *Id.*

designed, and manufactured, and such alternative formulations and designs were and are used by other manufacturers to produce and sell non-defective sunscreen.

10.     Plaintiffs seek damages and equitable remedies for themselves, and for the proposed Classes.

## JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.   This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court has general personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of doing business within the State of California, including within this District; has had continuous and systematic general business contacts within the state, including within this District; and can be said to have reasonably anticipated being haled into court in this forum.

13.     This Court has specific personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum. Specifically, Defendant knowingly directed the Product through the stream of commerce into this District. Defendant has advertised and marketed within this District through the wires and mail and via e-commerce websites through which residents of this state and District can purchase the Product. Further, Defendant knowingly directs electronic activity into this state and District with the intent to engage in business interactions and has in fact engaged in such interactions. Moreover, Defendant makes the Product available at retailers throughout this District.

14.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in

this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## PARTIES

### A. Plaintiffs

15.     Plaintiff Jonathan Horowitz is a resident and citizen of La Habra, California who purchased and used the Product within the relevant time period.

16.     Plaintiff Dalit Cohen is a resident and citizen of Roslyn, New York who purchased and used the Product within the relevant time period.

### B. Defendant

17.     Defendant, Neutrogena Corporation (hereinafter "Neutrogena"), is a Delaware corporation. Upon information and belief, Neutrogena's headquarters are located in California, despite having surrendered its authority to transact business in California in 2015. Neutrogena is authorized to do business in New York. As one of the world's leading brands of skin care, hair care, and cosmetics, Neutrogena distributes its products, including the Product, throughout the United States. Neutrogena's line of sunscreen products, including the sunscreen purchased by Plaintiffs and Class Members, are available at retail stores throughout California and the United States.

18.     Defendant manufactures, markets, advertises, and distributes the Product throughout the United States. Defendant created and/or authorized the false, misleading, omitting, and deceptive advertisements, packaging, and labeling of the Product.

## FACTUAL ALLEGATIONS

### A. Neutrogena

19.     Neutrogena has been a leader in the cosmetic market since it was founded24 in 1930.[3]

20.     Neutrogena products are sold at mass market retailers in the United States, including Walmart and Target, in addition to being sold online at retailers such as Amazon.

---

[3] *See* https://www.neutrogena.com/the-bar/why-neutrogena.html (last visited Dec. 8, 2021).

21.    Neutrogena has consistently positioned itself as "the Dermatologist Recommended skincare brand[.]"[4]

**B. Chemical Sunscreen**

22.    There are two categories of sunscreen on the market: physical and chemical.

23.    Physical sunscreens work by reflecting the UV rays from the sun, protecting the skin from the harmful rays. These formulations rely on the use of ingredients such as zinc oxide and titanium dioxide to provide this protection. Physical sunscreens create a barrier between the skin and the sun and aren't absorbed into the skin.[5]

24.    Alternatively, chemical-based sunscreen contains various synthetic, chemical active ingredients, including octocrylene, which protect the skin by absorbing ultraviolet ("UV") radiation and dissipating it as heat.[6]

25.    Chemical sunscreens are absorbed into the skin and absorb the harmful rays before they can penetrate deep enough to cause damage to the skin.[7]

26.    The Product's label shows that it contains 5% octocrylene, which is one of its active ingredients:

---

[4] https://www.neutrogena.com/about-us.html (last visited Dec. 8, 2021).

[5] *See* https://thedermreview.com/octocrylene/ (last visited Nov. 30, 2021).

[6] *See* https://thedermreview.com/octocrylene/ (last visited Dec. 8, 2021).

[7] *Id.*

ACTUAL SIZE

27.    In contrast with its disclose of octocrylene, Defendant does not disclose the existence of, or likelihood of the existence of, benzophenone.

**C. Benzophenone**

28.    Benzophenone is a chemical whose presence is banned for food and food packaging.

29.    Benzophenone is associated with a wide range of toxicities, including genotoxicity, carcinogenicity, and endocrine disruption.[8]

_____

[8] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* Chemical Research in Toxicology, 2021 *34* (4), 1046-1054.

30.     Benzophenone is notorious for inducing dermatological pathologies, including contact dermatitis, erythema, urticaria, and photoinduced dermatitis.[9]

31.     In addition, benzophenone is on the Proposition 65 list in California because exposure can increase the risk of cancer.[10] Indeed, benzophenone has been linked with higher rates of leukemia.[11]

32.     The personal care product industry has known for some time that octocrylene is contaminated with benzophenone. When purchasing raw octocrylene for sunscreen or personal care product manufacturing, the industry admits that benzophenone is a contaminant found in octocrylene and "cannot be removed by its entirety when octocrylene is being processed..."[12]

**D. Studies Show Benzophenone Accumulates and Increases in Octocrylene-Containing Products**

33.     The source of benzophenone in a product arises from two main sources: (1) benzophenone contamination in the octocrylene used to manufacture the commercial product and (2) accumulation of benzophenone from the degradation of octocrylene as the product ages.[13]

34.     In order to examine the potential degradation of octocrylene in sunscreen products, one study tested for benzophenone in seventeen products purchased in France and the United States, sixteen of which contained octocrylene.[14] The study's authors tested each product upon purchase and again after being subjected to a U.S.

---

[9] *Id.*

[10] https://www.p65warnings.ca.gov/sites/default/files/downloads/factsheets/benzophenone_fact_sheet.pdf (last visited Dec. 8, 2021).

[11] https://pubmed.ncbi.nlm.nih.gov/16741556/ (last visited Dec. 8, 2021)

[12] *Frequently asked questions: benzophenone and octocrylene California Prop 65 ingredients*, Rodan + Fields, San Francisco, CA. https://www.rodanandfields.com/images/Archives/FAQs_Benzophenone.pdf (last visited Dec. 8, 2021).

[13] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* Chemical Research in Toxicology, 2021 *34* (4), 1046-1054.

[14] *Id.*

FDA accelerated aging protocol meant to reflect a single year of shelf life. In addition, the authors tested two single ingredient sources of octocrylene.

35.    The results revealed that each of the sixteen products containing octocrylene also had benzophenone at the time of purchase, and that the level of benzophenone grew after aging. In contrast, the product without octocrylene did not show any detectable amount of benzophenone at the time of purchase and after aging. Furthermore, benzophenone was detected in the pure octocrylene as well.

36.    The results of the study demonstrate that sunscreen products containing octocrylene are purchased with demonstrated levels of benzophenone and that the octocrylene in sunscreen products further degrades over time and results in higher levels of benzophenone.

37.    In a separate study, different authors also examined whether octocrylene-containing products develop benzophenone over time.[15] These authors examined both raw octocrylene and thirty-nine skincare products, of which twenty-eight contained octocrylene. The study showed that all twenty-eight products containing octocrylene had demonstrable levels of benzophenone at the time of purchase, and that the levels of benzophenone significantly increased over time. The authors concluded that the increased levels of benzophenone was likely due to the degradation of octocrylene.

38.    Further, Plaintiffs commissioned their own independent testing performed by a third-party lab. The results of the test found benzophenone in the Product.

**E. Defendant's Representations**

39.    Defendant positions itself as a trustworthy, safe, and responsible company to consumers. In order to convey this message, Defendant issues several principles that guide "Our Safety & Care Commitment" which "reflect your highest

---

[15] Kenn Foubert *et al.*, *The presence of benzophenone in sunscreens and cosmetics containing the organic UV filter octocrylene: A laboratory study*, Contact Dermatitis, July 2021, 69-77 (available at https://onlinelibrary.wiley.com/doi/pdf/10.1111/cod.13845)

expectations of us and all that we expect of ourselves."[16] These principles include "Safety starts with ingredients", "Safety never ends", "Science isn't set in stone", and "We alone shouldn't be the last word on safety."[17]

40.     Under "Good enough is not enough", Defendant commits to following best practices: "We not only follow individual country regulations, but also look to incorporate the best thinking and practices from top authorities for skincare products around the world."[18]

41.     Under "Safety starts with ingredients", Defendant describes the "high bar" for its ingredients: "Our ingredients are screened for quality, manufacturing process, government regulations, published research, and our ingredient safety databases."[19] Defendant emphasizes the importance of safety and its ingredients under "Safety goes beyond the ingredient list": "It's also a matter of how our ingredients are used, our manufacturing safeguards, how the products are used, and testing requirements for our products."[20]

42.     Defendant commits to ongoing testing of its products, including the Product: "Safety doesn't end with placing the products on the shelf. Our experts are continuously monitoring and adjusting the process based on the latest research, guidance, regulations, customer, and consumer feedback."[21] Defendant re-emphasizes this same point: "we continually check the latest data on our ingredients. When necessary we update our products to make sure they are still safe."[22]

---

[16] https://www.neutrogena.com/producttesting.html (last visited Dec. 8, 2021).

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

43.     Defendant's website further represents that:

> At Neutrogena®, safety is paramount. What we include in our products is just as important as what we exclude from them. We strive to avoid unnecessary and harsh ingredients and we prioritize ingredients that are not only safe for your skin, but also safe for the planet, throughout the lifecycle of our products. We are committed to ingredient transparency so you can make informed decisions for your skin health.[23]

44.     Despite the representations that Defendant is committed to following "best practices", that they screen their ingredients, adhere to ongoing testing of their ingredients, and engage in "ingredient transparency," nothing on the Product label insinuates, states, or warns that the Product contains benzophenone, or that the octocrylene in the Product degrades over time and results in an accumulation of benzophenone.

45.     Based on its stated commitments, Defendant either knew or should have known that the Product contains benzophenone and that the octocrylene in the Product degrades and produces an accumulation of benzophenone.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Jonathan Horowitz**

46.     Plaintiff Horowitz purchased the Product on or around April 15, 2021, at a Walmart store located in Lahabra, California and paid approximately $20.00 for the Product.

47.     Nowhere on the packaging did Defendant disclose that the octocrylene in the Product degrades over time and results in an accumulation of benzophenone.

48.     Nowhere on the packaging did Defendant disclose that the Product contains, or is likely to contain, benzophenone at the time of purchase.

---

[23] *See* https://www.neutrogena.com/our-promise.html (last visited Dec. 8, 2021).

49.    If Plaintiff Horowitz had been aware of the existence and accumulation of benzophenone in the Product, he would not have purchased the Product or would have paid significantly less.

50.    As a result of Defendant's actions, Plaintiff Horowitz has incurred damages, including economic damages.

**Dalit Cohen**

51.    Plaintiff Cohen purchased the Product on or around July 1, 2021 at a CVS store located at 373 Willis Ave, Roslyn Heights, New York 11577, and paid approximately $12.99 for the Product.

52.    Nowhere on the packaging did Defendant disclose that octocrylene in the Product degrades over time and results in an accumulation of benzophenone.

53.    Nowhere on the packaging did Defendant disclose that the Product contains, or is likely to contain, benzophenone at the time of purchase.

54.    If Plaintiff Cohen had been aware of the existence and accumulation of benzophenone in the Product, she would not have purchased the Product or would have paid significantly less.

55.    As a result of Defendant's actions, Plaintiff Cohen has incurred damages, including economic damages.

## CLASS ACTION ALLEGATIONS

56.    Plaintiffs brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:** During the fullest period allowed by law, all persons in the United States who purchased the Product for personal use and not for resale within the United States.

> **California Subclass:** During the fullest period allowed by law, all persons in the State of California who purchased the Product for personal use and not for resale within the State of California.

**New York Subclass:** During the fullest period allowed by law, all persons in the State of New York who purchased the Product for personal use and not for resale within the State of New York.

57. Members of the classes described are referred to as "Class Members" or members of the "Classes."

58. The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

59. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

61. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of

the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a) Whether the Product contains benzophenone at the time of purchase;

b) Whether the Product accumulates benzophenone over time;

c) Whether Defendant omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Product;

d) Whether the Product is defectively designed, formulated, and/or manufactured;

e) Whether Defendant knew or reasonably should have known about the harmful level of benzophenone in the Product prior to distributing and selling them to Plaintiffs and Class Members;

f) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

g) Whether Defendant's actions violate the consumer protection statutes invoked herein;

h) Whether Defendant breached the implied warranty of merchantability relating to the Product;

i) Whether Defendant breached an express warranty to Plaintiffs and Class Members;

j) Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class Members;

k) Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

l) Whether Plaintiffs and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

m) Whether Plaintiffs and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

62. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

63. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the presence of benzophenone in the Product. Plaintiffs shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omission of material fact and misrepresentations regarding the presence of benzophenone in the Product.

64. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

65. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm

described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

66.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

67.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
### Violation of the California's Consumer Legal Remedies Act ("CLRA")
### California Business and Professions Code §§ 1750, *et seq.*
### (Plaintiff Horowitz Individually and on Behalf of the California Subclass)

68.    Plaintiff Horowitz hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

69.    Defendant's conduct constitutes violations under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

70.    Defendant's conduct falls within the meaning of this statute because it caused transactions to occur resulting in the sale or lease of goods or services to consumers – namely, the sale of the Product to Plaintiff Horowitz and the California Subclass. Sunscreens are considered goods within the meaning of the statute under Civil Code § 1761(a) and Defendant's sale of the Product is considered a service under Civil Code § 1761(b).

71.    Plaintiff Horowitz and California Subclass Members are consumers pursuant to the CLRA.

72.    Defendant violated the CLRA by way of the following provisions:

- In violation of Civil Code § 1770(a)(5), Defendant represented (and continue to represent) that its goods have characteristics which they do not have – that, in exchange for each payment, Plaintiff Horowitz and the members of the Class receive sunscreen which is functioning as intended and which is not contaminated with benzophenone;

- In violation of Civil Code § 1770(a)(14), Defendant represented (and continue to represent) that a consumer has rights, remedies and/or obligations which they did not have – that Plaintiff Horowitz and members of the Class receive sunscreen which is functioning as intended

1    and which is not contaminated with benzophenone, and that Defendant

2    is capable of correcting defects when it is not;

3    73.    Defendant also engaged in unfair competition or unfair or deceptive acts

4   or practices in violation of Civil Code § 1770(a)(5) and (a)(7) when it represented

5   through its advertising, warranties, and other express representations that the Product

6   has benefits or characteristics that it did not actually have, namely that the Product

7   was safe to use and failing to disclose that the Product was contaminated

8   benzophenone.

9    74.    Defendant is aware that its representations are false and misleading –

10   specifically, Defendant continued to sell the Product into the stream of commerce even

11   after it had knowledge that the Product was contaminated with benzophenone.

12    75.    Plaintiff Horowitz and California Subclass have suffered injury-in-fact

13   and actual damages resulting from Defendant's omissions and misrepresentations

14   because Defendant knew that the Product was contaminated with benzophenone.

15    76.    On December 14, 2021, prior to the filing of this Complaint, Plaintiff

16   Horowitz and Class Members put Defendant on written notice of their claims arising

17   from violations of numerous provisions of California law, including the California

18   Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, *et seq.*, as

19   well as other causes of action. Plaintiff Horowitz will amend his Complaint to add

20   claims for monetary damages if Neutrogena fails to take the corrective actions.

21    77.    Plaintiff Horowitz's declaration stating facts showing that venue in this

22   District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit

23   A.

24    78.    In accordance with Civil Code § 1780(a), Plaintiff Horowitz and the

25   other California Subclass Members seek injunctive and equitable relief for

26   Defendant's violations of the CLRA, including an injunction to enjoin Defendant from

27   continuing its deceptive advertising and sales practices.

28

79.     Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff Horowitz seeks an order enjoining Defendant from the unlawful practices described above, a declaration that Defendant's conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

80.     Plaintiff Horowitz and the California Subclass Members' injuries were proximately caused by Defendant's fraudulent business practices.

81.     Therefore, Plaintiff Horowitz and California Subclass Members are entitled to relief under the CLRA.

## COUNT II
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, et seq.**
**(Plaintiff Horowitz Individually and on Behalf of the California Subclass)**

82.     Plaintiff Horowitz hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

83.     Plaintiff Horowitz brings this cause of action against Defendant individually and on behalf of the California Class.

84.     The conduct described herein took place within the state of California and constitutes deceptive or false advertising in violation of California Business and Professions Code §§ 17500, et seq.

85.     California Business and Professions Code §§ 17500, et seq. prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products.

86.     Defendant, when it marketed, advertised, and sold the Product, represented to Plaintiff Horowitz and California Subclass Members that the Product was free of defects and safe, despite the fact that the Product was defective and unsafe.

87.    At the time of their misrepresentations and/or omissions, Defendant was either aware that the Product was defective and unsafe, or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. Defendant concealed, omitted, and failed to disclose this information to Plaintiff Horowitz and California Subclass Members.

88.    Defendant's descriptions of the Product were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

89.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

90.    Plaintiff has standing to pursue claims under the FAL as he reasonably reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials regarding the Product, when selecting and purchasing the Product.

91.    In reliance on the statements made in Defendant's advertising and marketing materials, and Defendant's omissions and concealment of material facts regarding the quality and use of the Product, Plaintiff Horowitz and California Subclass Members purchased the Product.

92.    Had Defendant disclosed the true defective nature of the Product, Plaintiff and California Subclass Members would not have purchased the Product or would have paid substantially less for it.

93.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Horowitz and California Subclass Members who paid for the Product.

94.    Plaintiff Horowitz and California Subclass Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant and by means of their deceptive or misleading representations, including

1    monies already obtained from Plaintiff and California Class Members as provided for

2    by the California Business and Professions Code §§ 17500, *et seq.*

3

4                                              **COUNT III**
                **Violations of The California Unfair Competition Law ("UCL"),**
5                    **Cal. Bus. & Prof. Code §§ 17200, et seq.**
            **(Plaintiff Horowitz Individually and on Behalf of the California Subclass)**
6
7            95.    Plaintiffs hereby re-alleges and incorporates all allegations contained in

8    the preceding paragraphs as if fully set forth herein.

9            96.    Plaintiff Horowitz brings this cause of action against Defendant

10   individually and on behalf of the California Class.

11           97.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

12           98.    Plaintiff Horowitz and California Class Members who purchased

13   Defendant's Product suffered an injury by virtue of buying defective sunscreen

14   products in which Defendant misrepresented and/or omitted the Product's true quality,

15   reliability, safety, and use.

16           99.    Had Plaintiff Horowitz and California Class Members known that

17   Defendant materially misrepresented the Product and/or omitted material information

18   regarding its defective Product and its safety, which contains benzophenone, they

19   would not have purchased the Product.

20           100.   Defendant's conduct, as alleged herein, violates the laws and public

21   policies of California and the federal government, as set out in the preceding

22   paragraphs of this complaint.

23           101.   There is no benefit to consumers or competition by allowing Defendant

24   to deceptively label, market, and advertise its Product.

25           102.   Plaintiff Horowitz and California Class Members who purchased

26   Defendant's Product had no way of reasonably knowing that the Product was

27   deceptively packaged, marketed, advertised, and labeled, was defective, not safe, and

28   unsuitable for its intended use.   Thus, Plaintiff Horowitz and California Subclass

     Members could not have reasonably avoided the harm they suffered.

103.   The above acts of Defendant, in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff Horowitz and California Class Members, were and are likely to deceive reasonable consumers by obfuscating and omitting the true defective nature of Defendant's Product, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, et seq.

104.   As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff Horowitz, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

105.   Mislabeled cosmetics cannot legally be manufactured, held, advertised, distributed, or sold.  Thus, mislabeled cosmetics have no economic value and are worthless as a matter of law, and purchasers of mislabeled cosmetics are entitled to a restitution refund of the purchase price of the mislabeled cosmetics.

## COUNT IV
### Violation of New York General Business Law § 349
### (Plaintiff Cohen Individually and on Behalf of the New York Subclass)

106.   Plaintiff Cohen hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

107.   N.Y. Gen. Bus. Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

108.   Defendant's actions occurred in the conduct of business, trade, or commerce.

109.   Defendant's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the N.Y. Gen. Bus. Law.

110.   Defendant's deceptive acts and practices were intended to mislead consumers in a material way in the process of purchasing Defendant's Product, and a reasonable consumer would be misled by their deceptive acts and practices.

111.   All of Defendant's deceptive acts and practices constitute conduct directed at consumers.

112.   Defendant intended that Plaintiff Cohen and each of the other members of the New York Subclass would rely upon its deceptive conduct and false advertising, and consumers, including Plaintiff Cohen and putative New York Subclass Members, did in fact rely upon deceptive conduct.

113.   Defendant's foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the N.Y. Gen. Bus. Law § 349, in that Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Product without any mention of the fact that the Product contains the carcinogen benzophenone.

114.   Defendant's unconscionable, deceptive, and/or unfair practices caused actual damages to Plaintiff Cohen and the New York Subclass Members, who were unaware that the Product contained benzophenone.

115.   As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Plaintiff Cohen and New York Subclass Members have been damaged as alleged herein and are thus entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

116.   In addition, Plaintiff Cohen and New York Subclass Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

117.   In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT V**
**Violation of New York General Business Laws § 350**
**(Plaintiff Cohen Individually and on Behalf of the New York Subclass)**

118.   Plaintiff Cohen hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

119.   N.Y. Gen. Bus. Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

120.   Defendant's actions occurred in the conduct of business, trade, or commerce.

121.   Defendant's foregoing acts and practices, including their advertising, were directed at consumers.

122.   Defendant's conduct, as described in the Complaint, constitutes "false advertising" within the meaning of the N.Y. Gen. Bus. Law § 350, as Defendant publicly disseminating misleading false advertisements through advertising and marketing the Product, failing to disclose that the Product contains benzophenone, a known carcinogen.

123.   Defendant's foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the N.Y. Gen. Bus. Law § 350.

124.   Defendant's false, misleading, and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the Product was fit for its intended purpose of safely protection against ultraviolet rays and failing to disclose that the Product contains the carcinogen benzophenone.

125.   Defendant's false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

126. Defendant's false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

127. Defendant's false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest.

128. Defendant intended that Plaintiff Cohen and the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct. Defendant engaged in misleading and deceptive advertising that failed to disclose that the Product contains benzophenone. Defendant chose to label the Product in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Product would be unwilling or less likely to buy the Product if those consumers knew the Product contained benzophenone, a harmful carcinogen known to cause cancer. Thus, Defendant's advertising and labeling was an unfair, untrue, and misleading practice.

129. Consumers, including Plaintiff Cohen and New York Subclass members either would not have purchased the Product or would have paid less for them had the known that the Product contains benzophenone.

130. As a direct and proximate result of Defendant's deceptive acts and practices, including its use or employment of false advertising, Plaintiff Cohen and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

131. In addition, Plaintiff Cohen and New York Subclass members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

132. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT VI
## Breach of Express Warranty
## (On Behalf of Plaintiffs Individually, the National Class and, Alternatively, the California and New York Subclasses)

133.    Plaintiffs hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

134.    Plaintiffs, and each member of the National Class, formed a contract with Defendant at the time Plaintiffs and each member of the National Class purchased the Product.

135.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above.

136.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the National Class and Defendant.

137.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

138.    Plaintiffs and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

139.    Defendant breached express warranties about the Product and its qualities because Defendant's Product contained the harmful chemical benzophenone at the time of purchase and the chemical octocrylene which degrades over time resulting in an accumulation of benzophenone and the Product does not conform to Defendant's affirmations and promises described above.

140.    Plaintiffs and each of the members of the National Class would not have purchased the Product had they known the true nature of the harmful chemicals in the Product.

141.   As a result of Defendant's breach of warranty, Plaintiffs and each of the members of the National Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

## COUNT VII
### Breach of Implied Warranty
### (On Behalf of Plaintiffs Individually, the National Class and, Alternatively, the California and New York Subclasses)

142.   Plaintiffs hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

143.   Defendant provided Plaintiffs and Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which it was sold, i.e., that it was free of benzophenone.

144.   Defendant marketed, sold, and/or distributed the Product, and Plaintiffs and other Class Members purchased the Product.

145.   Plaintiffs bring this claim for breach of the implied warranty of merchantability on behalf of themselves and other consumers who purchased the Product with the expectation of the Product not containing the dangerous chemical benzophenone.

146.   The Defendant has breached the implied warranties of merchantability that it made to Plaintiffs and the prospective Class. For example, Defendant impliedly warranted that the Product was free from defects, that it was merchantable, and that it was fit for the ordinary purpose for which sunscreen is used.

147.   When sold by Defendant, the Product was not merchantable, did not pass without objection in the trade, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

148.   As a result of Defendant's breaches of implied warranties, Class members did not receive the benefit of their bargain and suffered damages at the point

of sale stemming from their overpayment for the Product that contained benzophenone.

149.    As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

## COUNT VIII

### Unjust Enrichment
**(In the Alternative and on Behalf of Plaintiffs, the National Class and, Alternatively, the California and New York Subclasses)**

150.    Plaintiffs hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

151.    Plaintiffs and the other members of the National Class conferred benefits on Defendant by purchasing the Product.

152.    Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Product by Plaintiffs and the other members of the National Class.

153.    Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the National Class because they would have not purchased the Product if Defendant's had disclosed that the Product contained harmful chemicals.

154.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other members of the National Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the National Class for its unjust enrichment, as ordered by the Court.

## **JURY DEMAND**

155.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendant as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

Dated: March 16, 2022

Respectfully submitted,

By:

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

*/s/* Alex R. Straus

Alex R. Straus, Esq. (SBN 321366)
280 South Beverly Place
Beverly Hills, CA 90212

Tel.:  (917) 471-1894
Fax:  (310) 496-3176
Email: astraus@milberg.com

Nick Suciu, III*

*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:  (313) 303-3472
Fax:  (865) 522-0049

Jennifer Czeisler*

Russell Busch*

Virginia Ann Whitener*
*jczeisler@milberg.com*
*rbusch@milberg.com*

*gwhitener@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:  (865) 247-0080
Fax:  (865) 522-0049

* *Pro Hac Vice* Application forthcoming

***Attorneys for Plaintiffs***